**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

_____
                                                        )
MARK W. CUTLER,                             )
                                                        )
                        Plaintiff,              )
                                                        )                3:15-cv-00199-RCJ-VPC
            vs.                                      )
                                                        )                **ORDER**
ISIDRO BACA et al.,                           )
                                                        )
                        Defendants.       )
                                                        )
_____)

      This is a prisoner civil rights complaint pursuant to 42 U.S.C. § 1983.  For the reasons given herein, the Court screens the Complaint pursuant to 28 U.S.C. § 1915A and dismisses it, without leave to amend.

**I.      FACTS AND PROCEDURAL HISTORY**

      Plaintiff Mark Cutler is a prisoner in the custody of the Nevada Department of Corrections ("NDOC").  He has sued Northern Nevada Correctional Center ("NNCC") Warden Isidro Baca, NDOC Medical Director R. Aranas, NNCC Director of Nursing Services John Keast, and Registered Nurse "Jane Doe" in this Court for violations of his Eighth Amendment rights under § 1983 based on alleged improper treatment of a medical condition.

      On December 28, 2013, Plaintiff awoke in his cell at NNCC with a fever and great pain due to a marble-sized lump at the base of his penis. (Compl. 4, ECF No. 1-1).  He sent a medical kite requesting to be seen. (_Id._).  He did not notify a guard of an emergency "man down"

1   situation, which would have resulted in immediate treatment, because there is a $25 charge. (*Id.*

2   5).  When he was not scheduled for treatment on either December 29 or 30, he called a "man

3   down." (*Id.* 5–6).  Nurse Doe gave him ibuprofen and an antibiotic. (*Id.* 6).  Plaintiff expressed

4   his concern that the boil was Methicillin -Resistant Staphylococcus Aureas ("MRSA"), but

5   Nurse Doe noted that it was not policy to take a culture of every boil, and that the antibiotic

6   should cure it. (*Id.*).  When he returned to his cell, several inmates approached him and told him

7   they had heard he had MRSA and that he would be beaten if he didn't request a cell move. (*Id.*

8   6–7).  Plaintiff obtained a move to a two-man cell, but his new cellmate had also heard the

9   rumors and demanded a move. (*Id.* 7).  Plaintiff does not allege ever having been attacked.  On

10   December 31, 2013, Plaintiff refused to be housed with any other inmates until he saw a doctor.

11   (*Id.* 9).  That day, Plaintiff was seen by Dr. Getny, who gave him oxycodone and an intravenous

12   antibiotic; a culture tested positive for MRSA. (*Id.* 9–10).  Over a year later, Plaintiff still suffers

13   erectile dysfunction and "P.T.S.D. type symptoms." (*Id.* 10–11).

14   ## II.    LEGAL STANDARDS

15        Federal courts must conduct a preliminary screening in any case in which a prisoner

16   seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28

17   U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any

18   claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or

19   seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1)–

20   (2).  Dismissal of a complaint for failure to state a claim upon which relief can be granted is

21   provided for in Federal Rule 12(b)(6), and the court applies the same standard under § 1915A.

22   *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).  When a court dismisses a complaint

23   upon screening, the plaintiff should be given leave to amend the complaint with directions as to

24

curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take

1   judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279,

2   1282 (9th Cir. 1986).

3   Finally, all or part of a complaint filed by a prisoner may be dismissed *sua sponte* if the

4   prisoner's claims lack an arguable basis in law or in fact. This includes claims based on legal

5   conclusions that are untenable, e.g., claims against defendants who are immune from suit or

6   claims of infringement of a legal interest which clearly does not exist, as well as claims based on

7   fanciful factual allegations, e.g., fantastic or delusional scenarios. *See Neitzke v. Williams*, 490

8   U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

9   **III.   ANALYSIS**

10   The Eighth Amendment prohibits the imposition of cruel and unusual punishment and

11   "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and

12   decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth

13   Amendment when he acts with "deliberate indifference" to the serious medical needs of an

14   inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment

15   violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious

16   enough to constitute cruel and unusual punishment—and a subjective standard—deliberate

17   indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). To establish the first prong,

18   "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's

19   condition could result in further significant injury or the unnecessary and wanton infliction of

20   pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To

21   satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to

22   respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

23   *Id.* Simple negligence will not support an Eighth Amendment claim. *Estelle*, 429 U.S. at 106

24

("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Plaintiff has not made out a claim of cruel and unusual punishment.  Plaintiff admits he could have obtained immediate treatment for his boil if he had been willing to call a "man down" and subject himself to a $25 charge.  And Plaintiff admits that when he eventually did call a "man down," he was treated immediately with both painkillers and antibiotics.  Plaintiff cannot make out a claim of deliberate indifference under those circumstances.  At most, Nurse Doe was guilty of misidentifying the pathogen or failing to take a culture to positively identify it.  That claim sounds in medical malpractice, not cruel and unusual punishment.  Nurse Doe's admitted provision of painkillers to numb the pain and antibiotics to kill the pathogen is fatal to any deliberate indifference claims (Counts III and IV).

The Court also dismisses Count II.  The policy of only providing immediate medical treatment subject to a $25 dollar charge is not cruel and unusual but a perfectly reasonable practice obviously designed to conserve scarce resources by ensuring that immediate treatment is limited to those situations serious enough that a prisoner is willing to pay $25 to be seen immediately, i.e., to move to the front of the long line of prisoners regularly seeking treatment. If every prisoner were theoretically entitled to immediate treatment upon demand, still only few would receive it, because there are presumably many more prisoners with current complaints than there are doctors to see them.  Certainly many prisoners would complain that their ailments were not taken seriously enough and that they should have moved ahead of other prisoners who were seen first.  The triage of multiple patients is a matter of medical opinion that is not subject to attack under the Eighth Amendment, except perhaps in an extreme case that does not present itself here.  Even outside of prison same-day treatment is not the norm, except in an emergency

room, which typically will cost much more than $25.  Plaintiff admittedly had the ability to obtain immediate treatment by calling a "man down," which he eventually did.

Next, the Court dismisses Count I.A.  Plaintiff alleges that policies that restrict the amount of disinfectant that can be used increases the chances of MRSA infection and is therefore cruel and unusual punishment.  But Plaintiff does not allege that the conditions at NNCC are generally unsanitary beyond what the Eighth Amendment will permit.  In the event an inmate complains of a prison's failure to provide adequate cleaning supplies, the issue should be "evaluated in light of the overall squalor at the penitentiary." *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985).  Plaintiff alleges only that additional cleaning supplies will reduce the chance of future MRSA or other bacterial infections.  Presumably that is true, but it is also true of any institution, no matter the current level of cleanliness.  It is not an allegation that the level of sanitation at NNCC is below constitutional standards.

Finally, the Court dismisses Count I.B.  Plaintiff does not allege any injury from other prisoners angry at having been housed with him.

## CONCLUSION

IT IS HEREBY ORDERED that the Application for Leave to Proceed in Forma Pauperis (ECF No. 1) is GRANTED, and the Clerk shall DETACH and FILE the Complaint (ECF No. 1-1).

IT IS FURTHER ORDERED that the Complaint is DISMISSED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 26th day of October, 2015.

_____
ROBERT C. JONES
United States District Judge